IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEAVON TEDDRICK COLEMAN,<br>a/k/a "Namii,"<br><br>*Defendant.* | Case No. 1:26-mj-427 |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Andrew Chance, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1. This Affidavit is submitted in support of a Criminal Complaint and Arrest Warrant for **KEAVON TEDDRICK COLEMAN, a/k/a "Namii"** ("**COLEMAN**"). Based on the information set forth in this Affidavit, I submit there is probable cause to believe that on or about July 15, 2026, in Prince William County, Virginia, within the Eastern District of Virginia, **COLEMAN**, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm, that is, a Glock 26, 9mm, semi-automatic pistol, bearing serial number DGB740, with a tan extended magazine, said firearm having been shipped or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 922(g)(1).

**AGENT BACKGROUND**

2. I am a Detective with the Prince William County Police Department ("PWCPD"). I have been employed as a police officer with the PWCPD since June 17, 2022. I have been assigned to the Gangs since March 22, 2025. I am currently assigned to the Federal Bureau of

Investigation ("FBI"), where I am federally deputized as a Task Force Officer with the FBI's Northern Virginia Safe Streets Task Force. As such, I am a law enforcement officer as defined under 18 U.S.C. § 2510(7) (i.e. an officer of the United States of a political sub-division thereof, who is empowered to conduct investigations of and to make arrests for federal offenses). During my time in law enforcement, I have participated in the application and execution of numerous arrest and search warrants in the investigations of narcotics, firearms, and gang-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, and other evidence of criminal activity.

3. I have received specialized training in gang and narcotic investigations, building and prosecution of gang cases, interviews, identification and documentation of gangs, search and seizure, firearms, firearms identification and criminal law. I have received training from private accredited law enforcement organizations, the Northern Virginia Criminal Justice Academy, and the Prince William County Criminal Justice Academy.

4. The facts and information contained in this Affidavit are based on my personal knowledge of the investigation and information obtained from other law enforcement officers. The observations of these law enforcement officers were relayed to me by the individuals who made them or are based on my review of police reports, documents, body worn camera footage, and physical evidence obtained during the investigation.

5. This Affidavit does not contain every fact known to me or the government regarding this investigation but rather contains only information necessary to demonstrate probable cause in support of a criminal complaint and arrest warrant.

**PROBABLE CAUSE**

6. On or about July 15, 2026, CARLOS ULISES GUEVARA a/k/a "Los" ("GUEVARA"), a member/associate of the Rollin 60s Crips gang, had an active warrant for his arrest. On or about July 15, 2026, members of the PWCPD's Gang Unit set up surveillance at an address in Woodbridge, Virginia, within the Eastern District of Virginia, which was GUEVARA's last known address.

7. While surveilling the residence on or about July 15, 2026, a dark-colored Chevy Malibu bearing Virginia registration SXS7443 and registered to a rental company, stopped in front of the residence. GUEVARA exited the front door of the residence, walked to the Malibu, and entered the rear seat behind the driver, who was later identified as **COLEMAN**. The Malibu then pulled off from the residence.

8. PWCPD's surveillance team followed the Malibu until it stopped within the turn lane at the intersection of Cardinal Drive and Waterway Drive in Woodbridge, Virginia. There, law enforcement conducted a vehicle interdiction. I ordered the driver to exit the vehicle and, when the driver did so, I recognized the driver as **COLEMAN**, a Rolling 60s member/associate and direct associate of GUEVARA.

9. As **COLEMAN** was exiting the vehicle, he said, "my phone boutta fall" and a cell phone that was visible on his lap fell to the ground. **COLEMAN** was detained and escorted to the front of the vehicle and the cell phone was subsequently seized as evidence. The cell phone is described as an Apple iPhone 14, in a custom case which displays three photographs of Zhanriell PERKINS ("PERKINS"), with the IMEI of 356296320841285. PERKINS is a known Rolling 60s member/associate who was shot and killed in and around November 2021. COLEMAN and PERKINS were close friends.

10. GUEVARA was seated in the rear driver's seat and was told to step out of the vehicle, which he did. GUEVARA was subsequently detained and notified that he had an active warrant for his arrest.

11. GUEVARA was then notified that he had an active warrant for his arrest. GUEVARA was patted down during his arrest and, during this pat down, law enforcement felt an object under GUEVARA's shirt that, based on the officer's training and experience, felt like a firearm. GUEVARA's shirt was raised, which revealed the firearm in the front of his waistband.

12. I removed the firearm from GUEVARA's waistband. The firearm was a black Smith and Wesson MP9 pistol bearing serial number NVC2305. The firearm was loaded with a bullet in the chamber. I then cleared and seized the firearm.

13. There was one additional occupant in the vehicle, La-niyah LACY ("LACY"), who was seated in the front passenger seat of the vehicle. LACY was also asked to exit the vehicle, and she complied with this request. After she exited the vehicle, Det. Miller asked LACY if there were any weapons or drugs inside the vehicle, and LACY replied that she was not aware of any.

14. After all occupants had been removed, I searched the vehicle based upon the observation of suspected narcotics in plain view. During the search, I reached under the front driver's seat, from the rear, and felt an object that was located on the floor and toward the front of the seat. I pulled the object toward the backseat, looked underneath the seat, and saw that it was a firearm, which was located in an area where **COLEMAN** would have immediate access to it. The firearm was also positioned with the grip end facing the front of the vehicle and the muzzle facing the back of the vehicle, which, based on my training and experience, is consistent with the firearm having been placed there by someone in the driver's seat.

15. Det. Ostergren then removed the firearm, a Glock 26, 9mm, semi-automatic pistol,

bearing serial number DGB740, with a tan extended magazine, from the front seat, and cleared the firearm. The firearm was loaded with one live 9mm round in the chamber and 16 live 9mm rounds in the magazine. Firearm as recovered is shown below.



*Photo of Glock 26 pistol after it was removed from vehicle*

16. When I advised **COLEMAN** that he was under arrest for the firearm recovered under the front seat, he acted surprised. **COLEMAN** then yelled toward LACY, "you leave your joint under the seat?"

17. Following this, LACY became less forthcoming with her responses to questions from Det. Miller and for the first time LACY told him that she does possess a Glock firearm but did not know if it was located in the vehicle. LACY was also unable to provide the model or

caliber of the firearm. LACY was only able to describe the firearm as black in color and explained that it was a gift from her godfather, Maurice Anderson.

18. On or about July 23, 2026, I obtained Virginia state search warrant authorization for the forensic examination and data extraction of the Apple iPhone that fell from **COLEMAN's** lap. I have reviewed the contents of the data extraction and located multiple digital artifacts further establishing that **COLEMAN** did knowingly possess the Glock 26 pistol in Prince William County, Virginia, within the Eastern District of Virginia, on or about July 15, 2026.

19. First, I located an image of what appears to be the same firearm next to an individual sitting in a chair. The metadata associated with the image shows that it was created on or about July 13, 2026, two days before the firearm was seized, using the back camera for an Apple iPhone 14, which is the same make and model phone that fell from **COLEMAN's** lap. Although you cannot see the individual's face in the image, the visible physical characteristics of that person are consistent with **COLEMAN's**.



*Image recovered from Apple iPhone 14*

20. I also located a video that according to the metadata was created on or about July 4, 2026, using the back camera for an Apple iPhone 14, which is the same make and model cell phone that fell from COLEMAN's lap. The video shows a male individual whose face is not visible, instructing LACY how to handle and shoot what appears to be the Glock 26 pistol. In the video, you can see that LACY is not familiar with firearm and is nervous about shooting it, which supports my belief that LACY was not telling the truth when she told Det. Miller that she owned a Glock firearm. Additionally, based upon my interactions with **COLEMAN** and familiarity with his voice, I believe the male voice instructing LACY how to handle and shoot the Glock 26 pistol is **COLEMAN's**. A screenshot from the video is depicted below.



*Image recovered from Apple iPhone 14*

21. As part of my law enforcement training, I have received training regarding the operability of firearms and firearms handling. I was able to observe Det. Ostergren unload, clear and inspect the Glock 26 pistol. Based on my training and experience, I know that Glock pistols are made to expel a projectile by the action of an explosive. My visual observation of the Glock 26 pistol, seized from the area underneath where **COLEMAN** was sitting, was consistent with other operable Glock pistols I have examined in the past. Therefore, based on my training and experience, the Glock 26 pistol bearing serial number DGB740 satisfies the definition of a firearm pursuant to 18 U.S.C. § 921.

22. Additionally, I spoke to a Bureau of Alcohol, Tobacco, Firearms, and Explosives agent who is trained in nexus research. I was informed that Glock 26 pistols are not manufactured in Virginia. Therefore, in my training and experience, I know that the Glock 26 pistol bearing serial number DGB740, which was recovered from the area underneath where **COLEMAN** was sitting, was necessarily shipped or transported in interstate or foreign commerce.

23. **COLEMAN** is a multi-time convicted felon, having been convicted of possession of a firearm by a felon within 10 years of a prior felony conviction, on or about September 5, 2018, and on or about February 19, 2025, both times in violation of Va. Code § 18.2-308.2, which is a crime punishable by imprisonment for a term exceeding one year. In addition, on or about February 10, 2017, **COLEMAN** was convicted of felony hit and run, in violation of Va. Code § 46.2-894, which is also a crime punishable by imprisonment for a term exceeding one year. As a convicted felon, **COLEMAN** is prohibited from knowingly possessing firearms.

## CONCLUSION

24. Based on the foregoing, I submit that probable cause exists to believe that on or about July 15, 2026, in Prince William County, Virginia, within the Eastern District of Virginia,

**COLEMAN**, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm, that is, a Glock 26, 9mm, semi-automatic pistol, bearing serial number DGB740, with a tan extended magazine, said firearm having been shipped or transported in interstate or foreign commerce, in violation of 18 U.S.C. § 922(g)(1).

Respectfully submitted,

Andrew Chance
Andrew Chance
Task Force Officer
Federal Bureau of Investigation

Attested to in accordance with the requirements of
Fed. R. Crim. P. 4.1 via telephone on October 27, 2026:

Hon. William B. Porter
United States Magistrate Judge
Eastern District of Virginia